## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DENNIS J. JOHNSON,**

                **Petitioner,**

**vs.**                                **CASE NO. 8:12-cv-1307-T-27AEP**
                                          **CRIM. CASE NO. 8:11-cr-12-T-27AEP**

**UNITED STATES OF AMERICA,**

                **Respondent.**

_____/

## O R D E R

**BEFORE THE COURT** are Petitioner's motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255 (CV Dkt. 1), the Government's response (CV Dkt. 16), and Petitioner's

motion for miscellaneous relief (CV Dkt. 28). Upon review, the Petitioner's motion to vacate is

DENIED.

### Procedural Background

Petitioner pleaded guilty pursuant to a written plea agreement to conspiracy to possess with

intent to distribute five kilograms or more of a mixture or substance containing a detectable amount

of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846 (Count One), and

to knowingly using and carrying a firearm in furtherance of a drug trafficking crime, in violation of

18 U.S.C. §§ 924(c)(1)(A) and 2 (Count Two).[1]  (CR. Dkt. 3).  Petitioner was sentenced to one

hundred eighty-eight (188) months imprisonment on Count One and to a consecutive term of sixty

_____

[1] The court granted the Government's motion to dismiss Count Three (felon in possession of a firearm) of the indictment. (CR Dkts. 123, 176).

months imprisonment on Count Two followed by concurrent terms of five years of supervised release. (CR Dkt. 120).

Petitioner signed his motion to vacate on May 31, 2012. The Government does not challenge the timeliness of the motion. Petitioner presents four grounds for relief:

**Ground One:**      Trial counsel rendered ineffective assistance by misadvising Petitioner about the length of the sentence he would receive upon conviction for the conspiracy offense (Count One), rendering Petitioner's guilty plea involuntary;

**Ground Two:**      Trial counsel rendered ineffective assistance by misadvising Petitioner about the length of the sentence he would receive upon conviction for the firearm possession offense (Count Two), rendering Petitioner's guilty plea involuntary;

**Ground Three:**    Trial counsel rendered ineffective assistance by failing to file a timely notice of appeal as instructed by Petitioner; and

**Ground Four:**     The Government and trial counsel breached the plea agreement by not "allowing and/or providing [Petitioner] the opportunity . . . to earn the agreed-upon levels in order to reduce [his] overall sentence to 60 or 72 months" (CV Dkt. 1, p. 8)

### Standard of Review for Ineffective Assistance of Counsel

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

2

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Id.* at 691-92. To meet this burden, Petitioner must show a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments

3

support the limitations on investigation." *Id.* at 690-91. Petitioner cannot meet his burden merely

by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the
> test even what most good lawyers would have done. We ask only whether some
> reasonable lawyer at the trial could have acted, in the circumstances, as defense
> counsel acted at trial. . . . We are not interested in grading lawyers' performances; we
> are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*,

218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could

have done something more or something different. So, omissions are inevitable. . . . [T]he issue is

not what is possible or 'what is prudent or appropriate, but only what is constitutionally

compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v.*

*Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

## Discussion

### Grounds One and Two

In ground one Petitioner contends that his trial counsel erroneously advised him that he

would receive only a "five or six year" sentence for the conspiracy charge in Count One if he pleaded

guilty. (CV Dkt. 8, p. 6). Petitioner argues that if counsel had properly investigated the case and the

applicable sentencing guidelines, counsel would have discovered that Petitioner faced a substantially

longer sentence than counsel suggested:

> Had defense counsel performed the requisite pre-trial investigation, defense counsel
> would have been in a position to advise the [Petitioner] whether a particular plea
> offer would be in the best interest of the [Petitioner]. However, by failing to perform
> the investigation, defense counsel erroneously misadvised the [Petitioner] of the
> sentence he would receive for pleading guilty. Without a plausible defensive strategy
> offered by defense counsel, [Petitioner] placed great emphasis on the misadvice from
> defense counsel.

> Due to the particular circumstances surrounding the case at the time, [Petitioner] readily believed that the five or six year plea deal was in his best interest. At the time the new offenses occurred, [Petitioner] was currently serving a term of supervised release from both a federal and state prior conviction. [Petitioner] believed that by accepting the plea for the five or six year sentence with the opportunity to reduce the sentence further with substantial assistance, that he would serve approximately 18 to 24 months on the new sentence for the conspiracy offense. Also, depending on the level of the violation for the term of supervised release, [Petitioner] would be sentenced between 12 to 30 months. Given the facts, [Petitioner] would serve 28 to 48 months overall.

(CV Dkt. 8, p. 5).

Petitioner further contends that during a March 28, 2011, meeting between himself, his counsel (Howard Anderson), co-defendant Kenneth Madden,[2] and Madden's defense counsel (Serbo Simeoni), he and Simeoni informed Anderson of two defense strategies "to be employed at trial in order to meet the Government's case." (CV Dkt. 8, p. 3). Specifically, Petitioner claims that these defenses called for Petitioner to sign a sworn affidavit exonerating Madden of the conspiracy, thereby forcing the Government to dismiss the conspiracy charge against both Petitioner and Madden, or in the alternative, reduce the offense to attempt "which would be two or three levels lower than the conspiracy offense." (Id.). Alternatively, the second defense was one of "subjective entrapment" which Petitioner maintains was available to him (as described to him by Simeoni) because there was no physical evidence connecting Madden to the drug conspiracy. (Id. at pp. 3-4). Petitioner claims that Anderson rejected both defenses. Petitioner further claims that Anderson

---

[2] Petitioner and Madden were both charged in Count One of the indictment. (CR Dkt. 3). Madden elected to proceed to trial. A superseding indictment (CR Dkt. 57) charged Madden with the drug conspiracy (Count One), knowingly using and carrying a firearm in furtherance of a drug trafficking crime (Count Two), and possessing with intent to distribute cocaine (Count Three). A jury convicted Madden of Counts One and Two and of the lesser-included offense of simple possession on Count Three (CR Dkt. 108). Madden was sentenced to life imprisonment on Count One, a consecutive term of sixty months imprisonment on Count Two, and a concurrent term of ninety days imprisonment on Count Three. (CR Dkt. 126). On appeal the United States Court of Appeals for the Eleventh Circuit vacated Madden's conviction on Count Two. (CR Dkt. 182). Count Two was subsequently dismissed and an amended judgment entered. (CR Dkts. 192, 193). Madden's appeal of the amended judgment is currently pending before the Eleventh Circuit.

informed him that he had neither researched a defense nor did he know of a plausible defense strategy. Rather, Petitioner asserts, Anderson "informed both [Petitioner] and Simeoni that if both [Petitioner] and [Madden] would agree to plead guilty to the charged offense, that he could get both defendants a five or six year sentence with the opportunity to reduce the sentence further by rendering substantial assistance."[3] (Id.). He further asserts that with a proper investigation of the two allegedly proposed defenses, Anderson could have discovered that "by allowing . . .Simeoni to obtain the requested sworn affidavit from [Petitioner] . . . exonerating [Madden] of any participation in the drug conspiracy . . . Simeoni then could have filed for a severance of trials." (Id. at p. 8). Petitioner contends that, as a result, the Government would have had to dismiss the conspiracy charge against Madden, leaving only Petitioner, an undercover federal agent, and a confidential informant as the only members of the conspiracy. Under applicable case law, Petitioner contends that he could not have been convicted of the conspiracy because a conspiracy may not rest on an agreement between a defendant and a confidential informant. As a result, the Government would have been forced to also dismiss the conspiracy charge against Petitioner.

In ground two Petitioner contends that Anderson told him that the firearm charge (Count Two) "was not a serious offense" and erroneously advised him that the maximum sentence he could receive for pleading guilty to that charge "would be between 36 to 50 months" that would run

---

[3] Petitioner claims in his memorandum of law that Simeoni would testify at an evidentiary hearing that at the March 28, 2011, meeting Anderson rejected the two defense strategies presented by Petitioner and Simeoni and that Anderson informed Petitioner and Simeoni that he could get both Petitioner and Madden a five or six year sentence with a chance for further reduction through substantial assistance. (CV Dkt. 8, p. 7). Petitioner asserts that Madden would also testify at an evidentiary hearing to these same facts. (Id.). Petitioner produces no affidavit or other evidence substantiating that either Simeoni or Madden would testify as Petitioner hypothesizes. See United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).

concurrent with the "five or six year" sentence on Count One.[4] (CV Dkt. 8, p. 12). Petitioner claims

that counsel's misadvice caused him to believe that a plea was his only option and that it was in

Petitioner's best interest to plea, particularly in light of the fact that Petitioner's violation of both

state and federal supervised release exposed him to a longer period of incarceration.[5] (CV Dkt. 8,

p. 13). Petitioner argues that with a proper investigation, Anderson would have discovered that the

firearm possession charge carried a statutory minimum sentence of five years to run consecutive to

the sentence for the conspiracy charge. Had Anderson advised Petitioner of this sentence, he claims

that "there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded

guilty and would have insisted on going to trial."[6] (CV Dkt. 8, p. 16).

The Government argues that grounds one and two are not cognizable on collateral attack

because Petitioner entered a knowing and voluntary plea. (CV Dkt. 16, p. 7). The Government also

provides an affidavit from Anderson in which Anderson avers that he discussed with Petitioner the

benefits of entering a plea rather than proceeding to trial and the maximum sentences Petitioner

faced upon conviction.[7] Petitioner in his reply argues that "the assertions of [Anderson] as related

---

[4] As in ground one, Petitioner speculatively claims, without affidavit or evidentiary support, that both Simeoni and Madden would testify at an evidentiary hearing to the facts he purports in ground two.

[5] Petitioner claims that "[w]ith the 12 to 36 month sentence for the violations, [he] would then serve a term of 42 to 56 months overall," which he believed was in his best interest. (CV Dkt. 8, p. 14).

[6] Petitioner also asserts in ground two that under *Smith v. United States*, 508 U.S. 223 (1993), and *Bailey v. United States*, 516 U.S. 137 (1995), the "two authorative case law doctrine," the district court would have been precluded from imposing a sixty-month consecutive sentence for the firearm possession conviction. (CV Dkt. 8, p. 16). Both *Smith* and *Bailey* address convictions under 18 U.S.C.§ 924(c)(1), the same statute under which Petitioner was convicted in count two. *See* CR Dkt. 3. Petitioner claims that, if his case had been presented to a jury, under the "two authorative case law doctrine . . . no reasonable jurist would have been able to convict [him] or would have found [him] guilty based on the facts and evidence. (CV Dkt. 8, p.16).

[7] Anderson avers:

Upon receiving the case discovery from the government and reviewing Mr. Johnson's lengthy criminal
(continued...)

7

to the charged offense[s] are false." (CV Dkt. 24, pp. 3, 5-6).

Petitioner's appeal waiver generally precludes him from advancing an ineffective assistance

---

[7](...continued)
history, I was able to quickly determine that Mr. Johnson on the drug charge and felon in possession was a career offender and armed career criminal. Upon meeting with Mr. Johnson, along with some meetings with the co-defendant, Madden, I advised Mr. Johnson that the government had a very strong case on the drug charge as well as the two separate gun offenses. I advised Mr. Johnson of his enhanced penalty potential if he went to trial and he decided not to go to trial and cooperate with the government in hopes of getting his sentence reduced.

His cooperation was to be twofold. First, testifying against the co-defendant, Mr. Madden, who decided to go to trial. Second, give information on other individuals involved in illegal activity. Mr. Johnson signed a plea agreement that was thoroughly explained and reviewed with him. He pled guilty to count[s] one and two of the indictment [and] count three would be dismissed, which was the felon in possession charge. Mr. Johnson was advised and reviewed his PSR with counsel which classified him as a career offender on the drug conspiracy. His guidelines were 262-327 months, with 60 months to follow on the remaining gun charge. Mr. Johnson was made well aware that he had career offender status and what that enhanced penalty would mean as far as what type of sentence he would receive, both prior to pleading and sentencing. Mr. Johnson was advised had he gone to trial and was convicted he would have a guideline range of 360 [months] to life on the drug charge, followed by five years to life on the gun trafficking/possession charge consecutive to the drug charge. And the felon in possession [charge] would have been 15 years to life and that could have been concurrent or consecutive to either of the first two charges. In short, if he went to trial and was convicted, as co-defendant Madden was, he would have faced at least 35 years total in federal prison.

. . .

At sentencing, Mr. Johnson received a three level additional reduction in his sentence on the drug charge for his substantial assistance slash cooperation against co-defendant Madden. Mr. Johnson did not actually testify, but proffered and gave AUSA S. Harris some good information that she in turn used to convict Mr. Madden. Ms. Harris initially filed for a two-level reduction, the District Court considered my and Mr. Johnson's mitigation argument and reduced his guideline sentence one additional level. His guideline range was then 188-210 months on the drug charge, followed by a 60 month minimum on the gun possession charge. Mr. Johnson was sentenced by the District Court to 188 months on the drug charge followed by 60 months consecutive on the gun charge, the 924(c) gun charge, for a total of 248 months. This was the least amount of time that Mr. Johnson could have received.

. . . .

In regards to Mr. Johnson['s] claims that I was ineffective in my representation of him I would argue that his claim is completely without merit. As far as my represent[ation] of him [on] the substantive charges, I reviewed with Mr. Johnson all of the evidence and discovery against him in this case. Advised him of the status of the law and how it applied to each charge. Reviewed thoroughly both the options to go to trial or plead guilty. Potential estimated sentences if he was convicted at trial and if he pled guilty. In short, all options were conveyed to him, as well as any possible defenses.

(CV Dkt. 16, affidavit of Howard C. Anderson, pp. 1-3).

of counsel claim in this Section 2255 motion. *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005). However, to the extent that both grounds can be said to bear upon the validity of Petitioner's plea, the sentence appeal waiver in Petitioner's plea agreement does not bar federal review and the court considers the merits of both grounds. *See Patel v. United States*, 252 Fed. App'x 970, 974-75 (11th Cir. 2007) (holding ineffective assistance of counsel claim related to the validity of defendant's guilty plea is not barred by a waiver of collateral relief).

Even assuming that counsel erroneously advised Petitioner about the sentence he would receive upon conviction for both the conspiracy offense and the firearm offense, the written plea agreement explicitly identifies the minimum mandatory sentences for convictions on Counts One and Two, both of which are more than "five or six years" (Count One) or "36-50 months." (Count Two).[8] Petitioner averred under oath at the change of plea hearing, *inter alia*, that he (1) had read the plea agreement, (2) had discussed the sentencing guidelines with counsel, (3) understood the sentences he faced if he persisted in his guilty plea, and (4) entered his plea without threat or coercion:

> COURT:                Do you feel you've had a full and fair opportunity to review
>                               all of the facts in your case in consultation with your attorney?

---

[8] The plea agreement states:

2.      Minimum and Maximum Penalties

Count One [conspiracy] is punishable by a mandatory minimum term of imprisonment of not less than ten years up to life, a fine of up to $4,000,000, and a term of supervised release of at least five years. Count Two is punishable by a term of imprisonment of not less than five years up to life consecutive to the sentence imposed as to Count One, a fine of $250,000, [and] a term of supervised relief of up to five years . . . .

(CR Dkt. 47, pp. 1-2). Petitioner signed the written plea agreement on April 18, 2011, three days before his change of plea hearing on April 21, 2011. The record does not show, and Petitioner does not claim, that he did not read the plea agreement, that he was unaware of the minimum mandatory sentences described in the plea agreement, or that he did not understand the sentences as described in the plea agreement.

DEFENDANT:      Yes, sir, I have.

COURT:      Have you discussed all your options, to include your option to take your case to trial?

DEFENDANT:      Yes, I have, sir.

COURT:      After discussing those options, are you satisfied with your decision to enter the written plea agreement?

DEFENDANT:      Yes, sir.

COURT:      Do you feel Mr. Anderson has done everything you have asked him to do for you?

DEFENDANT:      Yes, I have.

COURT:      Do you feel he's done anything in an unsatisfactory manner?

DEFENDANT:      What did you say?

COURT:      Are you satisfied with the advi[c]e and representation that you have received in this case?

DEFENDANT:      Yes, sir.

COURT:      Do you have a copy of the plea agreement in front of you?

DEFENDANT:      Yes, I do, sir.

COURT:      Mr. Johnson, if you can, confirm for me your initials on each of the pages of your plea agreement and your signature on the last page.

DEFENDANT:      Everything is in order.  Yes, that's my signature.

COURT:      Thank you, Mr. Johnson.  Do your initials and signature on the last page of your plea agreement indicate that you have reviewed the plea agreement in its entirety in consultation with your attorney?

DEFENDANT:      Yes, sir.

COURT:      Has your attorney answered all your questions about your plea

agreement?

DEFENDANT:     Yes, sir, yes.

COURT:         As such, do you feel that you understand all the provisions of your plea agreement?

DEFENDANT:     Yes, sir.

. . . .

COURT:         Let me ask you in general, as to your decision to enter a plea in this case, has anyone forced you or threatened you or anyone you may know for that matter, in order to induce you to enter a plea of guilt in this case?

DEFENDANT:     No, sir.

. . . .

COURT:         Then let me explain to you the maximum penalties for Counts One and Two of the indictment.   Those penalties are identified for you starting on the first page of your plea agreement in paragraph A(2).

               Count [One] is punishable by a mandatory minimum term of imprisonment of ten years up to a maximum term of imprisonment of life, a fine up to $4 million [dollars], a term of supervised release of at least five years, and a special assessment of $100, which is due on the date of sentencing. And I note the special assessment because that's not specifically identified for you in your plea agreement. But let me reinforce that again, that as to that count there will be a special assessment of $100.

               Count Two is punishable by a term of imprisonment of not less than five years up to a maximum term of life.   Any term of imprisonment as to Count Two must run consecutive to the sentence imposed on Count One.   Additionally, a maximum fine of $250,000 [dollars], a term of supervised relief of up to five years and a special assessment of $100, which is due on the date of sentencing.

11

|  | Mr. Johnson, do you understand the maximum penalties associated with Counts One and Two of the guilty plea? |
|---|---|
| DEFENDANT: | Yes, I do, sir. |

. . . .

|  |  |
|---|---|
| COURT: | What I need to explain to you, and it's important you understand, no one at this time can tell you with any certainty what your advisory guideline range will be. That cannot be done until the United States Probation Office has had an opportunity to prepare an important document called a Presentence Investigation Report. This is an important document because the court will use it as an aide in determining an appropriate sentence for you.

You will have an opportunity to review the presentence investigation report in consultation with your attorney prior to your sentencing hearing and you will be allowed to make any objections to the report that you deem necessary. The Government will have the same opportunity. If your objections go unresolved prior to your sentencing hearing, they then will be resolved at your sentencing hearing by Judge Whittemore. No one can tell you at this time with any cert[ainty] what your range will be. Do you understand this, sir? |
| DEFENDANT: | Yes, sir. |
| COURT: | And even if you have attempted to estimate a potential guideline calculation for your case, you need to understand that your estimation can be wrong and if it is wrong, you cannot later complain and ask to withdraw from your plea of guilt. Do you understand that? |
| DEFENDANT: | Yes, I do. |

. . . .

|  |  |
|---|---|
| COURT: | In essence, do you understand that the court can sentence you to the maximum extent allowed by law as for Count[s] One and Two of the indictment? |
| DEFENDANT: | Yes, sir, I do. |

COURT:          Has anyone promised you a specific time in jail if you entered
                a plea of guilt in this case?

DEFENDANT:      No, sir.

. . . .

COURT:          All right, then based upon my review of the indictment, the
                plea agreement that has been filed, as well as my discussions
                with Mr. Johnson, and the independent factual basis as
                provided by the Government, I'm fully satisfied that Mr.
                Johnson is competent to enter a plea of guilt and that his plea
                is entered knowingly, intelligently, and voluntarily, and that
                it is supported by the facts defined as to each of the essential
                elements.

(CR Dkt. 178, pp. 8-10, 18-19, 21-23, 33-34).[9]

"For a guilty plea to be entered knowingly and intelligently, 'the defendant must have not

only the mental competence to understand and appreciate the nature and consequences of his plea

but he also must be reasonably informed of the nature of the charges against him, the factual basis

underlying those charges, and the legal options and alternatives that are available.'" *Finch v.

Vaughan*, 67 F.3d 909, 914 (11th Cir. 1995) (quoting *Stano v. Dugger*, 921 F.2d 1125, 1142 (11th

Cir. 1991)). *See also United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) ("A court

accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,'

ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of

the charges, and (3) understands the consequences of his plea."). "[T]he representations of the

defendant [at a Rule 11 plea hearing], as well as any findings made by the judge accepting the plea,

constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in

---

[9] The magistrate judge in the remainder of the colloquy advised Petitioner of, *inter alia*, the rights he forfeited by pleading guilty, the nature and elements of the charged offenses, the factual basis for the charges, and the implications of other particular provisions of the plea agreement. (CR Dkt. 178, pp. 8-33).

open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977);

*see also United States v. Anderson*, 384 Fed. App'x 863, 865 (11th Cir. 2010) ("There is a strong

presumption that statements made during a plea colloquy are true."). Such representations are

presumptively trustworthy and considered conclusive absent compelling evidence to the contrary.

"[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to

show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

Aside from his own self-serving allegations, Petitioner produces no evidence to substantiate

his claim that he involuntarily entered his guilty plea. Petitioner averred that he entered his plea

freely and voluntarily without threat or coercion. (CR Dkt. 178, p. 18). The signed plea agreement

and Petitioner's sworn statements at the plea colloquy show that: (1) Petitioner was aware of and

understood the nature and elements of the charged offenses, (2) Petitioner had discussed the

sentencing guidelines with counsel and understood that the sentencing guidelines were advisory, (3)

the magistrate judge explained to Petitioner that the sentencing judge would consider the sentencing

guidelines along with other factors in the PSR in deciding Petitioner's sentence, (4) the magistrate

judge warned Petitioner that any erroneous sentence estimate by himself or counsel would not be a

valid basis for Petitioner to withdraw his guilty plea, (5) Petitioner agreed that no one, including his

counsel, had promised him a particular sentence or made any other promise to him not memorialized

in the written plea agreement. Petitioner averred under oath that he understood each of these

provisions and that he was satisfied with counsel's representation. Petitioner admitted that he was,

in fact, guilty of the charged offenses and that it was his decision to enter his plea. (CR Dkt. 178,

pp. 32-33). Petitioner's sworn statements at the plea colloquy demonstrate the knowing and

voluntary nature of his plea. Petitioner presents no evidence establishing that he did not want to

proceed with his plea or that his sworn testimony during the plea colloquy was false. His unsubstantiated allegations in his motion to vacate fail to overcome the strong presumption of verity afforded his sworn statements made during the plea colloquy and the court finds that Petitioner entered a valid knowing and voluntary plea. *Blackledge v. Allison*, 431 U.S. at 73-74.

Moreover, even if, as alleged by Petitioner, he was promised a particular sentence or misadvised by counsel about his sentence, Petitioner cannot establish his ineffective assistance of counsel claim. The law is clear that an inaccurate prediction about sentencing alone will not generally be sufficient to sustain a claim of ineffective assistance of counsel. *See United States v. Himick*, 139 Fed. App'x 227, 228-29 (11th Cir. 2005) ("[A] defendant's reliance on an attorney's mistaken impression about the length of his sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence."); *United States v. Pease*, 240 F.3d 938, 940-41 (11th Cir. 2001) (rejecting argument by defendant sentenced as a career offender that his plea was not knowing and voluntary because he had relied on counsel's prediction that his potential sentence under the plea agreement would be anywhere from five to ten years when, in fact, he faced a ten-year minimum mandatory sentence). Here, Petitioner does not establish deficient performance by counsel in either ground one or ground two. Under *Strickland*, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Walker v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). The record shows that counsel met that obligation in Petitioner's case.

Notwithstanding, even assuming deficient performance, Petitioner fails to establish resulting

prejudice necessary to obtain federal relief. *See Hill v. Lockhart*, 474 U.S. 59 (1985), (holding that to establish prejudice under *Strickland*, a defendant who pleads guilty must show a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on proceeding to trial.).   One of the benefits of Petitioner's plea agreement is the dismissal of count three of the indictment (felon in possession of a firearm) which could have, upon conviction at trial, exposed Petitioner to a substantial prison sentence even aside from his convictions on counts one and two.   Petitioner does not establish that, absent counsel's allegedly erroneous advice about sentencing, he would have foregone a plea agreement and insisted on proceeding to trial on all three charges.   Because Petitioner cannot establish prejudice in either ground one or ground two, he cannot obtain relief on either ground of ineffective assistance of counsel.   *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffectiveness claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").[10]

**Ground Three**

Petitioner contends that his counsel rendered ineffective assistance by not timely filing a

---

[10] Petitioner requests an evidentiary hearing on both grounds one and two. (CV Dkt. 25, pp. 1-2). Ordinarily, when a petitioner alleges that his attorney misrepresented the maximum penalty he faced and that he would not have pleaded guilty had he not been misadvised, an evidentiary hearing is necessary to develop and establish a complete record. *See United States v. Fairchild*, 803 F.2d 1121 (11th Cir. 1986); *Pitts v. United States*, 763 F.2d 197 (6th Cir. 1985). Where, however, as here, the transcripts of Petitioner's guilty plea hearing and his sentencing hearing refute his contentions that he was mislead about the penalties he faced if convicted, an evidentiary hearing is unnecessary, as "the files and records make manifest the lack of merit of [the] Section 2255 claim." *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984). *See also Saunders v. United States*, 278 Fed. App'x 976, 978 (11th Cir. 2008) (hearing not required where petitioner's allegations are affirmatively contradicted by the record.). Moreover, when a petitioner claims that he relied upon his attorney's assurances of the sentence he was to receive, and his sworn responses to the magistrate judge's Rule 11 inquiry expressly refute that unexpressed reliance on his attorney's assurances, an evidentiary hearing is unnecessary. *See, e.g., United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.10 (11th Cir. 1987) (evidentiary hearing unnecessary on defendant's motion to withdraw guilty plea where comprehensive Rule 11 colloquy was conducted and defendant's sworn responses during colloquy refute defendant's "unexpressed reliance on his attorney's speculation.").

notice of appeal as instructed by Petitioner. He argues that he directed counsel to appeal "the sentence and the breach of the oral and written plea contract . . . [and] the district court's order striking [Petitioner]'s motion to withdraw the guilty plea."[11] (CV Dkt. 1, p. 7). In support of this ground Petitioner in his affidavit states the following:

> On the date of July 20, 2011, the defendant contacted the Federal Public Defender's Office requesting to speak to defense counsel (Howard C. Anderson). The defendant spoke to defense counsel's legal assistant (Maria Mendez). Ms. Mendez informed the defendant that defense counsel was not in at the moment but could she assist the defendant. . . . [T]he defendant also informed Ms. Mendez about defense counsel's unprofessional conduct. After this Ms. Mendez instructed the defendant to call back the following day.

> On July 21, 2011, the defendant called the Federal Public Defender's Office requesting to speak to defense counsel. The defendant again spoke to defense counsel's legal assistant (Maria Mendez). Ms. Mendez informed the defendant that defense counsel was not in. Defendant requested that an appeal be filed on his behalf by defense counsel. Ms. Mendez informed the defendant that she would notify defense counsel.

> On July 22, 2011, the defendant again contacted the Public Defender's Office requesting to speak to defense counsel. Defendant [was] informed that defense counsel was not in. Defendant requested to speak to (Mr. Allen F. Hall) defense counsel's supervisor. Defendant [was] informed [that] Mr. Hall was not in. Defendant wrote a letter to Mr. Hall about defense counsel's actions.

> On July 26, 2011, the defendant spoke to defense counsel about filing a notice of appeal . . . . Defense counsel informed the defendant that he would file the notice of appeal in time . . . .[12]

> . . . .

> Defense counsel's legal assistant [at] the Federal Public Defender's Office (Ms. Maria Mendez) whose address is 400 N. Tampa St., Suite 2700, Tampa, Florida,

---

[11] After the plea hearing Petitioner moved, *pro se*, to withdraw his guilty plea because the Government allegedly breached the plea agreement by not providing him with continued opportunities to offer substantial assistance. (CR Dkt. 60). Because Petitioner was represented by counsel, the *pro se* motion was stricken. (CR Dkt. 69).

[12] Petitioner was sentenced on July 18, 2011. As of July 26, 2011, Petitioner still had time in which to file a notice of appeal. *See* Fed. R. App. P. 4(b)(1).

33602, will testify that the defendant on July 11, 2011, informed her to have defense counsel file an appeal on his behalf. Also Ms. Mendez will testify that she informed defense counsel about the defendant's wishes to appeal.

The supervisor for defense counsel (Mr. Allen F. Hall) of the Federal Public Defender's Office whose address is 400 N. Tampa St., Suite 2700, Tampa, Florida 33602, will testify that he spoke to the defendant about the letter written in regards to the actions of defense counsel.

(CV Dkt. 7, pp. 8-10).

Petitioner in his memorandum of law presents the following additional allegations:

Between the dates of July 19, 2011, and July 28, 2011, the defendant made numerous phone calls to the Federal Public Defender's Office requesting to speak to defense counsel (Howard C. Anderson) about filing an appeal.

. . . .

On the 26th of July 2011, the defendant contacted the Federal Public Defender's Office requesting to speak to defense counsel. Defense counsel and the defendant spoke on the phone for fifteen minutes. During the phone conversation the defendant instructed counsel to appeal the sentence, breach of the plea contract by the Government, and the court's order striking the defendant's motion to withdraw his guilty plea. Defense counsel informed the defendant that his assistant informed him of the situation and that he would file an appeal on behalf of the defendant. This conversation occurred between 9:20 and 10:00 a.m.

Hours later on the 26th of July 2011, between the time of 2:35 and 4:00 p.m., the defendant contacted the supervisor for defense counsel (Mr. Allen F. Hall) in regards to the letter written by the defendant. Mr. Hall informed the defendant that he was aware of the letter and that he would schedule a meeting with the defendant. The meeting was scheduled for August 5, 1011, at 9:00 a.m. However, the defendant was transported to Orange County for court and the meeting was not held.

The testimony of legal assistant Maria Mendez will verify the accuracy of the conversations with the defendant as stated herein and who will testify if called to do so. Also the testimony of Mr. Allen F. Hall would support the statements of the defendant during [the] phone conversation. Furthermore, the taped recordings of the phone conversations from the Pinellas County Jail would verify the statements contained herein.

In November of 2011, the defendant wrote to the district court concerning the status

18

of the appeal that should have been filed by defense counsel.[13] The defendant was informed that no appeal was filed on his behalf by defense counsel and that the defendant was also time barred for filing a belated appeal.[14]

. . . .

Although the defendant signed as part of the plea contract a limited waiver of his right to appeal . . . as in *Gomez-Diaz v. United States*, 433 F.3d 788 (11th Cir. 2005), and *United States v. Copeland*, 381 F.3d 1101 (11th Cir. 2004), the three grounds that were mentioned to defense counsel fell within the exception to the appeal waiver. Had defense counsel filed the notice of appeal as instructed by the defendant, the Eleventh Circuit Court of Appeals would have reviewed the violation of the defendant's procedural due process rights that occurred as a result of the Government's breach of the plea agreement.

(CV Dkt. 8, pp. 19-23).

The Government responds to Petitioner's ground three by referring to counsel's affidavit in which he avers:

I spoke with Mr. Johnson within a week after his sentencing at the jail and the agreed that he was not going to appeal his sentence. He knew that he still had some further potential cooperation that he was hoping the government would consider. Ultimately and to this point, the government was not able to use any of the information to his or their benefit. Mr. Johnson . . . did receive a (3) level substantial assistance reduction and his sentence was reduced by close to five years. Mr. Johnson made an informed decision to plead guilty and [an] informed decision not to appeal and to my knowledge never sent notice that he was seeking a belated appeal.[15]

. . . .

Again, as previously stated, Mr. Johnson never sought to appeal his sentence due to the hope of potential further assistance. Likewise, after advising him that he would, with significant certainty, receive no appellate relief, Mr. Johnson again indicated that he did not seek to appeal his sentence.

---

[13] *See* Cr Dkt. 131.

[14] Petitioner's inquiry was construed as a motion for leave to file a belated appeal and denied. (CR DKt. 132).

[15] Counsel does not acknowledge that Petitioner filed a motion for miscellaneous relief which this court construed as a motion for a belated appeal (CR Dkt. 131).

(CV Dkt. 16, affidavit of Howard C. Anderson, pp. 3-4).  The Government argues that Petitioner's

"sentence is well below [his] guideline range" and that Petitioner is not entitled to relief because he

"cannot show that his counsel's performance was deficient or that he was prejudiced by his counsel's

actions."  (CV Dkt. 16, p. 13).

> Petitioner in his reply argues:

> As to the assertions of counsel regarding this claim of ineffective assistance of counsel, defense counsel's assertions are meritless and [are] refuted by the files and records as well as the visitation log at the jail and the phone recordings [and] also defense counsel's legal assistant (Maria Mendez) who informed defense counsel of the petitioner's desire to file an appeal and counsel's work supervisor (Allen F. Hall).

> Defense counsel never visited the petitioner at the jail after the sentencing hearing held on July 18, 2011.  Furthermore, Mr. Allen F. Hall informed the petitioner that he would have defense counsel file the notice of appeal as requested by the petitioner in his letter and over the phone.  Mr. Allen F. Hall was the last person the petitioner spoke to about the appeal.

> Defense counsel's affidavit does not refute the fact that both his legal assistant (Maria Mendez) and his immediate work supervisor advised counsel of the petitioner's desire to appeal the court's order striking the petitioner's motion to withdraw his guilty plea, the violation of the plea agreement by the Government, and the sentence.

> The records and file will further show that in November of 2011 the petitioner filed a notice of inquiry to the clerk of the district court requesting the status of the notice of appeal that was to have been filed by defense counsel between the dates of July 26, 2011, and July 27, 2011 as instructed to do so by the petitioner and defense counsel's legal assistant Maria Mendez and also counsel's supervisor Mr. Allen F. Hall.

> . . . .

> The district court's order denying the request for a belated appeal also demonstrates that, but for counsel's deficient performance, the petitioner would have filed a timely appeal.

(CV Dkt. 24, pp. 8-9).  Petitioner requests an evidentiary hearing on this ground.  (CV Dkt. 25, pp.

2-3).

> The appeal waiver in Petitioner's plea agreement does not prevent him from filing a Section

2255 motion to challenge counsel's failure to file a notice of appeal. *Gomez-Diaz v. United States*, 433 F.3d 788, 793-95 (11th Cir. 2005). *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), holds that *Strickland* governs an ineffective assistance of counsel claim based upon counsel's failure to file a notice of appeal on a petitioner's behalf. To evaluate such a claim, a court must first establish whether the petitioner specifically requested counsel to file a notice of appeal. "A defendant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken - - i.e., the defendant expressed to his attorney a desire to appeal." *McElroy v. United States*, 259 Fed. App'x. 262 (11th Cir. 2007).

It is undisputed in this case that counsel did not file a notice of appeal on Petitioner's behalf and Petitioner's allegations, if true, would entitle him to an out-of-time appeal. *Flores-Ortega*, 528 U.S. at 477, 483. The record neither confirms nor refutes Petitioner's claim that he instructed counsel to file an appeal. Section 2255 requires a district court to grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C.§ 2255(b). Where, as here, a decision on counsel's ineffectiveness for failure to file a notice of appeal requires a credibility determination and the pleadings are insufficient to establish the content of the communications between a defendant and his counsel, an evidentiary hearing is necessary. *Gomez-Diaz v. United States*, 433 F.3d at 792. *See also* Rule 8, Rules Governing Section 2255 Proceedings; *Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002) (An evidentiary hearing is to be held where "the petitioner alleges facts that, if true, would entitle him to relief.")(quotation omitted).

**Ground Four**

Petitioner contends that both "the Government and defense counsel breached the terms of the oral and written plea contract under Title 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 by not allowing and/or providing [Petitioner] the opportunity to fulfill the terms of the oral and written plea contract . . . to earn the agreed-upon levels in order to reduce the [Petitioner]'s overall sentence to 60 or 72 months." (CV Dkt. 1, p. 8). Petitioner states in his affidavit that "between the dates of July 11, 2011, and April 30, 2012, there has been no attempts by the Government to allow or provide the [Petitioner] with the opportunity to render substantial assistance in accordance with the terms of the oral and written plea agreement as promised by the U.S. Attorney (Stacie B. Harris) and defense counsel (Howard C. Anderson)." (CV Dkt. 7, p. 9). Petitioner argues in his memorandum of law that "prior to entering into the plea agreement, [he] spoke with defense counsel . . . about the missing portions of the oral promises that w[ere] made to [him] by defense counsel concerning the five or six year sentence he would receive for pleading guilty and the opportunity to reduce the sentence prior to being sentenced with substantial assistance." (CV Dkt. 8, p. 25). Petitioner claims that these oral promises by counsel induced him to enter into the plea agreement.[16]

Petitioner describes three meetings at which he provided the Government with information that was ultimately used to convict his co-defendant and resulted in Petitioner receiving a three-level

---

[16] Petitioner also describes in his memorandum why he allegedly chose not to notify the district court of the sentence counsel promised him:

> On April 21, 2011, the defendant informed defense counsel that the promises he made to the defendant w[ere] not in the plea contract that the defendant was to sign. The defendant informed defense counsel that he would notify the district court about the oral promises made to him which induced the defendant to enter the plea agreement. Defense counsel, Howard C. Anderson, informed the defendant that if the defendant made the district court aware of the oral promises and that the promises were not in the plea contract, the district court would not accept the defendant's plea and the defendant would then have to go to trial on all charges. The defendant then agreed to remain silent about the oral promises that were made and that were not in the plea contract.

(CV Dkt. 8, pp. 25-26).

reduction at sentencing for his substantial assistance. Petitioner claims that the Government breached the plea agreement by not providing him with additional opportunities to provide substantial assistance to further reduce his sentence. (CV Dkt. 8, pp. 27-31). Petitioner specifically asserts:

> In the context in which the oral promises were made by both Assistant U.S. Attorneys and the A.T.F. case agent,[17] the defendant was given reason to believe that other than the proffer that was given on May, 12, 2011 and on the 27th of May 2011, and July 11, 2011, that the government would provide other opportunities for the defendant to reduce his sentence under both Title 18 U.S.C.§ 3553(e) and U.S.S.G.§ 5K1.1 before and after sentencing. This was the understanding between all the interested parties of the plea agreement and what the defendant understood [were] the promises made by the government when he entered his guilty plea.

> By not providing the defendant with the other opportunities to reduce the sentence under either U.S.S.G. § 5K1.1 and Title 18 U.S.C.§ 3553(e) before or after the sentencing hearing, the government's actions were inconsistent with the oral and written promises made as part of the plea agreement which induced the defendant to plead guilty. As such, the government breached the plea agreement when it unequivocally made promises and failed to fulfill them.

(CV Dkt. 8, p. 32). The Government argues that Petitioner procedurally defaulted this ground by not raising it previously either in the district court or on direct appeal. Petitioner in his reply reiterates his argument of entitlement to additional opportunities to offer substantial assistance and requests an evidentiary hearing on this ground. (CV Dkt. 24, pp. 18-19).

Petitioner's plea agreement includes the following provision regarding substantial assistance:

> Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant

---

[17] Petitioner claims that before sentencing he met with the Assistant United States Attorney (Stacie Harris) prosecuting his case, another "unknown individual from the attorney general's office that was assisting Ms. Harris" and "the A.T.F. case agent." (CV Dkt. 8, p. 27).

information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG § 5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C.§ 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). **In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.**

(CR Dkt. 47, pp. 4-5) (emphasis added). This provision, notwithstanding the valid appeal waiver in Petitioner's plea agreement, prevents Petitioner from challenging his sentence on either the ground that he did not receive additional opportunities after sentencing to provide what he believes is further "substantial assistance" or the ground that the Government failed file a Rule 35 motion on his behalf.

Even if Petitioner had not relinquished his right to present his substantial assistance issues on appeal or in this collateral motion, ground four warrants no relief. The plea agreement provides only that the Government would agree to consider Petitioner's cooperation; the plea agreement does not include a provision that the Government would provide Petitioner with unlimited opportunities to offer information either before or after sentencing.[18] As a result, the Government could not have

---

[18] U.S.S.G.§ 5K1.1 allows the Government to move for a sentence reduction based on substantial assistance provided by a defendant before sentencing. Federal Rule of Criminal Procedure 35(b) allows the Government to move for a reduction in sentence based on a defendant's substantial assistance to the government after sentencing.

breached a provision that is not part of the plea agreement.[19] *See, e.g., United States v. Bell*, 465 Fed. App'x 892, 894 (11th Cir. 2012) ("Where, as here, a plea agreement states that the government will 'consider' whether the defendant's cooperation qualifies as substantial assistance and that this determination is in the government's sole discretion, the government does not breach the agreement by failing to file a substantial assistance motion."). *See also Wade v. United States*, 504 U.S. 181, 185 (1992) (finding that the Government has the power, but not the duty, to file a substantial assistance motion and, by logical extension, has the power, but not the duty, to provide a defendant with opportunities to provide information). Ground four warrants no relief.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1) Grounds 1, 2, and 4 of Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 1) are **DENIED** and **DISMISSED**;

2) This case is scheduled for an evidentiary hearing on **only Ground 3** on **Thursday, January 30, 2014, at 3:00 P.M. at the Sam M. Gibbons United States Courthouse, 801 N. Florida Ave., Tampa, FL 33602**

3) The Government is directed to immediately issue a writ to secure Petitioner's presence at said hearing. The writ shall be provided to the U.S. Marshal's Office

---

[19] Petitioner is apparently alleging that, while not included in the written plea agreement, he and the Government entered into an oral agreement to allow him to cooperate with authorities, which cooperation would result in the filing of a Rule 35(b) motion which, he believes, would further reduce his sentence. Petitioner relies, in part, on *Santobello v. New York*, 404 U.S. 257 (1971), to argue that "the Government is bound by any material promises it makes to a defendant as part of [a] plea agreement that induces a defendant to plead guilty." (CV Dkt. 8, p. 24). It is well established that a Government promise which is part of the inducement for a guilty plea must be fulfilled. *Santobello*, 404 U.S. at 262. To the extent that Petitioner asserts that the Government made oral promises to him during his meetings with the AUSA and the ATF case agent that he would have additional opportunities to provide further information for the Government's consideration in filing a Rule 35 motion, such oral promises would still be subject (and Petitioner does not allege otherwise) to the Government's discretion in determining whether Petitioner's information amounted to "substantial assistance." The government is only held to a promise it actually made to a defendant. Other than his own self-serving statements, Petitioner provides no evidence of a promise by the Government that it would provide him additional post-sentencing opportunities to provide substantial assistance beyond those which resulted in his three-level reduction for substantial assistance. Consequently, his unsupported allegations warrant no relief. *See, e.g., Bischel v. United States*, 32 F.3d 259, 264 (7th Cir. 1994) ("A mere allegation of an 'understanding' or 'promise' without some documentation or statement in the court record is insufficient to merit an evidentiary hearing, much less a Rule 35 hearing.") (citing *Wade*, 504 U.S. at 186).

with a copy to chambers.

4)      The Government is directed to subpoena Petitioner's defense counsel in the underlying criminal action, Howard C. Anderson, Esq., to appear at said hearing.

5)      This matter is referred to Magistrate Judge Anthony E. Porcelli for immediate appointment of counsel for Petitioner.

6)      Petitioner's motion for miscellaneous relief (CV Dkt. 28) is **DENIED** as moot.[1]

**DONE AND ORDERED** in chambers this 23rd day of December, 2013.


*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**


Copies to:
Petitioner, *pro se*
Counsel of record

---

[1]  In his motion for miscellaneous relief Petitioner seeks a status report of this case.