UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENNIS J. JOHNSON,

           Petitioner,

vs.                                                    CASE NO. 8:12-cv-1307-T-27AEP
                                                           CRIM. CASE NO. 8:11-cr-12-T-27AEP

UNITED STATES OF AMERICA,

           Respondent.
_____/

## ORDER

**BEFORE THE COURT** is Ground Three of Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 1) alleging that trial counsel rendered ineffective assistance by failing to file a notice of appeal, after being instructed to do so by Petitioner.[1] Consistent with *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005), an evidentiary hearing was conducted on February 5, 2014. At the conclusion of the evidentiary hearing, the Court announced findings and conclusions, which are incorporated herein by reference. Based on the testimony and evidence presented, the Court finds that Ground Three lacks merit.

### Standard of Review for Ineffective Assistance of Counsel

*Strickland v. Washington*, 466 U.S. 668 (1984), governs this ineffective assistance of counsel claim:

---

[1] Grounds One, Two and Four of the motion were denied by order entered on December 23, 2013 (CV Dkt. 29). The procedural history of the case is summarized in that order. In summary, Petitioner's convictions resulted from guilty pleas entered pursuant to a written Plea Agreement, which included an appeal waiver (CR Dkt. 47, pp. 13-14). Petitioner was sentenced to one hundred eighty-eight (188) months imprisonment on Count One and to a consecutive term of sixty months imprisonment on Count Two followed by concurrent terms of five years of supervised release (CR Dkt. 120).

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

The *Strickland* test "applies to claims, like [Petitioner's], that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). When an attorney is asked by the client to file a notice of appeal but disregards that request, the client is denied the effective assistance of counsel. *Id.* at 477 ("We have long held that a lawyer who

disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). When a client fails to make a specific request that an attorney file an appeal, the inquiry is whether the attorney consulted sufficiently with the client about a potential appeal and made a reasonable effort to determine the client's wishes. *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005). If the attorney consulted with the client, the attorney's performance is professionally unreasonable only if he fails to follow the client's instructions. *Roe v. Flores-Ortega*, 528 U.S. at 478.

## Discussion

**Ground Three**

In Ground Three, Petitioner contends that Assistant Federal Defender Howard Anderson rendered ineffective assistance by failing to file a notice of appeal after being instructed to do so by Petitioner. He contends that he directed Anderson to appeal "the sentence and the breach of the oral and written plea contract . . . [and] the district court's order striking [Petitioner]'s motion to withdraw the guilty plea."[2] (CV Dkt. 1, p. 7). In support, Petitioner avers in his affidavit:

> On the date of July 20, 2011, the defendant contacted the Federal Public Defender's Office requesting to speak to defense counsel (Howard C. Anderson). The defendant spoke to defense counsel's legal assistant (Maria Mendez). Ms. Mendez informed the defendant that defense counsel was not in at the moment but could she assist the defendant. . . . [T]he defendant also informed Ms. Mendez about defense counsel's unprofessional conduct. After this Ms. Mendez instructed the defendant to call back the following day.
>
> On July 21, 2011, the defendant called the Federal Public Defender's Office requesting to speak to defense counsel. The defendant again spoke to defense

---

[2] After the plea hearing Petitioner moved, *pro se*, to withdraw his guilty plea because the Government allegedly breached the plea agreement by not providing him with continued opportunities to offer substantial assistance. (CR Dkt. 60). Because Petitioner was represented by counsel, the *pro se* motion was stricken in accordance with the Local Rules. (CR Dkt. 69).

3

counsel's legal assistant (Maria Mendez). Ms. Mendez informed the defendant that defense counsel was not in. Defendant requested that an appeal be filed on his behalf by defense counsel. Ms. Mendez informed the defendant that she would notify defense counsel.

On July 22, 2011, the defendant again contacted the Public Defender's Office requesting to speak to defense counsel. Defendant [was] informed that defense counsel was not in. Defendant requested to speak to (Mr. Allen F. Hall) defense counsel's supervisor. Defendant [was] informed [that] Mr. Hall was not in. Defendant wrote a letter to Mr. Hall about defense counsel's actions.

On July 26, 2011, the defendant spoke to defense counsel about filing a notice of appeal . . . . Defense counsel informed the defendant that he would file the notice of appeal in time . . . .³

. . . .

Defense counsel's legal assistant [at] the Federal Public Defender's Office (Ms. Maria Mendez) whose address is 400 N. Tampa St., Suite 2700, Tampa, Florida, 33602, will testify that the defendant on July 11, 2011, informed her to have defense counsel file an appeal on his behalf. Also Ms. Mendez will testify that she informed defense counsel about the defendant's wishes to appeal.

The supervisor for defense counsel (Mr. Allen F. Hall) of the Federal Public Defender's Office whose address is 400 N. Tampa St., Suite 2700, Tampa, Florida 33602, will testify that he spoke to the defendant about the letter written in regards to the actions of defense counsel.

(CV Dkt. 7, pp. 8-10).

In his memorandum of law, Petitioner further contends:

Between the dates of July 19, 2011, and July 28, 2011, the defendant made numerous phone calls to the Federal Public Defender's Office requesting to speak to defense counsel (Howard C. Anderson) about filing an appeal.

. . . .

On the 26th of July 2011, the defendant contacted the Federal Public Defender's Office requesting to speak to defense counsel. Defense counsel and the defendant

---

³ Petitioner was sentenced on July 18, 2011. As of July 26, 2011, Petitioner still had time in which to file a notice of appeal. *See* Fed. R. App. P. 4(b)(1).

> spoke on the phone for fifteen minutes. During the phone conversation the defendant instructed counsel to appeal the sentence, breach of the plea contract by the Government, and the court's order striking the defendant's motion to withdraw his guilty plea. Defense counsel informed the defendant that his assistant informed him of the situation and that he would file an appeal on behalf of the defendant. This conversation occurred between 9:20 and 10:00 a.m.
>
> Hours later on the 26th of July 2011, between the time of 2:35 and 4:00 p.m., the defendant contacted the supervisor for defense counsel (Mr. Allen F. Hall) in regards to the letter written by the defendant. Mr. Hall informed the defendant that he was aware of the letter and that he would schedule a meeting with the defendant. The meeting was scheduled for August 5, 1011, at 9:00 a.m. However, the defendant was transported to Orange County for court and the meeting was not held.
>
> The testimony of legal assistant Maria Mendez will verify the accuracy of the conversations with the defendant as stated herein and who will testify if called to do so. Also the testimony of Mr. Allen F. Hall would support the statements of the defendant during [the] phone conversation. Furthermore, the taped recordings of the phone conversations from the Pinellas County Jail would verify the statements contained herein.
>
> In November of 2011, the defendant wrote to the district court concerning the status of the appeal that should have been filed by defense counsel.[4] The defendant was informed that no appeal was filed on his behalf by defense counsel and that the defendant was also time barred for filing a belated appeal.[5]
>
> . . . .
>
> Although the defendant signed as part of the plea contract a limited waiver of his right to appeal . . . as in *Gomez-Diaz v. United States*, 433 F.3d 788 (11th Cir. 2005), and *United States v. Copeland*, 381 F.3d 1101 (11th Cir. 2004), the three grounds that were mentioned to defense counsel fell within the exception to the appeal waiver. Had defense counsel filed the notice of appeal as instructed by the defendant, the Eleventh Circuit Court of Appeals would have reviewed the violation of the defendant's procedural due process rights that occurred as a result of the Government's breach of the plea agreement.

(CV Dkt. 8, pp. 19-23).

---

[4] *See* CR Dkt. 131.

[5] Petitioner's inquiry was construed as a motion for leave to file a belated appeal and denied. (CR Dkt. 132).

As part of the Government's response, Anderson's affidavit was filed, in which he avers:

> I spoke with Mr. Johnson within a week after his sentencing at the jail and the agreed that he was not going to appeal his sentence. He knew that he still had some further potential cooperation that he was hoping the government would consider. Ultimately and to this point, the government was not able to use any of the information to his or their benefit. Mr. Johnson . . . did receive a (3) level substantial assistance reduction and his sentence was reduced by close to five years. Mr. Johnson made an informed decision to plead guilty and [an] informed decision not to appeal and to my knowledge never sent notice that he was seeking a belated appeal.
>
> . . . .
>
> Again, as previously stated, Mr. Johnson never sought to appeal his sentence due to the hope of potential further assistance. Likewise, after advising him that he would, with significant certainty, receive no appellate relief, Mr. Johnson again indicated that he did not seek to appeal his sentence.

(CV Dkt. 16, affidavit of Howard C. Anderson, pp. 3-4).

## The Evidentiary Hearing

Because a credibility determination was necessary to establish what the conversations and communications were between Petitioner and Anderson regarding an appeal, an evidentiary hearing was conducted. *See Gomez-Diaz v. United States*, 433 F.3d at 792. At the hearing, Maria Mendez, Anderson's legal assistant at the Federal Public Defender's Office, testified that she recalled speaking with Petitioner on the telephone after his sentencing but that Petitioner did not tell her that he wanted to file an appeal. And Mendez was adamant that she did not tell Petitioner that she would tell Anderson to file an appeal.[6] Mendez testified that as part of her duties, she maintained a case log during the course of Anderson's representation of Petitioner and that the log does not contain any

---

[6] Mendez testified that her conversations with Petitioner after July 18, 2011 (the date of sentencing), concerned only Petitioner wanting Anderson to pick up documents from Petitioner's sister which he believed would contribute to him receiving a sentence reduction for substantial assistance. Although Petitioner testified that the documents were never picked up, Anderson sent an investigator from the Federal Public Defender's Office to retrieve them and the originals remain in Anderson's file today. Anderson forwarded copies of the documents Petitioner's attorney in Orlando, who was representing him on unrelated charges.

notes to Anderson indicating that Petitioner requested an appeal.[7] Further, Mendez explained that although she received a letter post-marked in September 2011 from Petitioner addressed to Anderson, that letter did not mention an appeal.[8]

Petitioner claims in his motion to vacate (and testified) that he wrote a letter to Anderson's supervisor at the Federal Public Defender's Office, Alec Hall, about Anderson's handling of his case. Petitioner further claims that he spoke with Hall on the telephone about the letter and that Hall agreed to schedule a meeting with Petitioner.[9] (CV Dkt. 8, pp. 19-23). Hall testified that he has no recollection of Petitioner's case, of speaking with Petitioner, or having received correspondence from Petitioner.

Petitioner testified that he spoke with Anderson on the telephone on July 26, 2011 and that he specifically instructed Anderson to file a notice of appeal. According to Petitioner, he made multiple phone calls to Mendez and Mendez told him that she would tell Anderson to file an appeal on Petitioner's behalf. Petitioner testified that he spoke to Anderson before the sentencing hearing and, believing that the Government was not upholding its agreement to allow him to provide substantial assistance and that he would not get the benefit of a further sentence reduction, told Anderson that he wanted to file an appeal.[10]

Petitioner claimed that Anderson told him that he would file a notice of appeal and Petitioner

---

[7] The case log was admitted as Government's Exhibit 1.

[8] The letter from Petitioner to Anderson was admitted as Government's Exhibit 2.

[9] Petitioner claims that this meeting never occurred because he was transferred to another detention facility in Orange County before the meeting could be scheduled.

[10] Petitioner's plea agreement required him to cooperate with the United States in the investigation and prosecution of others, namely his co-defendant, Kenneth Madden. (CR Dkt. 47, pp. 4-5). The Government ultimately did not call Petitioner to testify at Madden's trial but nonetheless filed a motion for a downward departure pursuant to U.S.S.G. § 5K1.1 based on substantial assistance, which was granted (CR Dkt. 117).

believed that an appeal had, in fact, been filed. He testified that Anderson never discussed with him the effect an appeal would have on Petitioner's eligibility for a further sentence reduction under Rule 35.[11] Petitioner repeatedly insisted that he told Mendez, Anderson, and Hall that he wanted to file an appeal, that he instructed Anderson to file an appeal, and that he never told Anderson that he did not want to appeal.

Petitioner's testimony that he instructed Anderson to file an appeal was simply not credible. Moreover, it was inconsistent with his letter to Anderson written after he had been sentenced, in which he voiced a number of complaints, including not having been provided an opportunity to provide additional substantial assistance, but never mentioning an appeal.

Anderson testified that after sentencing, he discussed Petitioner's appellate rights with him, including the policy of the United States Attorney's Office regarding a defendant's eligibility for a Rule 35 motion when an appeal is filed. According to Anderson, Petitioner had an adequate understanding of the pros and cons of filing an appeal and the effect an appeal would have on his chance of receiving a Rule 35 motion.

More specifically, Anderson explained that Petitioner never asked him, either by written correspondence, telephonic conversation, or in person, to file an appeal. According to Anderson, Petitioner did not want to appeal because he wanted to continue cooperating with the Government with the hope of obtaining a further sentence reduction through a Rule 35 motion, which Anderson

---

[11] Federal Rule of Criminal Procedure 35(b)(1) provides: "Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person."

confirmed in his close-out letter to Petitioner (Government's Exhibit 3).[12] Finally, Anderson confirmed that his case file does not include any notation that Petitioner ever requested an appeal.

Considering the testimony and evidence presented and the record, the Court finds that Petitioner's claim of ineffective assistance of counsel for failing to file a notice of appeal is without merit. Because it is clear that Petitioner did not instruct Anderson to file an appeal, the *per se* duty outlined in *Flores-Ortega* was not triggered. Anderson's close-out letter to Petitioner confirmed that Petitioner did not want to appeal. Moreover, consistent with Anderson's testimony, the close-out letter alluded to Petitioner's desire to continue his cooperation in hopes of gaining a further reduction in sentence. As Anderson explained, his vague reference that he "will still be working on those other issues that we previously discussed" was a reference to Petitioner's cooperation, which Anderson did not want to document for the safety of Petitioner.

Petitioner's testimony that he requested Anderson to file an appeal, that he told Mendez to tell Anderson that he wanted to appeal, and that he told Hall that he wanted Anderson to file an appeal, is not credible.[13] Moreover, the testimony of both Anderson and Mendez, coupled with the absence in the Public Defender's file of any correspondence from Petitioner indicating a desire to appeal, contradicts Petitioner's testimony that he requested Anderson file an appeal.

---

[12] Anderson's case file includes a copy of the close-out letter dated August 26, 2011, which confirmed Anderson's agreement with Petitioner's decision not to appeal. Anderson testified that he believes Petitioner received it because the letter had not been returned by the jail. Petitioner's testimony that he would not have received the letter because by then he had been moved to another facility is belied by the record. Petitioner's September 6, 2011 letter to Anderson was sent from the same prison facility to which Anderson had sent close-out letter, more than a week before, on his August 26, 2011.

[13] At the conclusion of the hearing, the Court found that Petitioner's testimony was not credible, and that "[t]here are too many inconsistencies and contradictions and at times Mr. Johnson's testimony was [too] vague for me to place any amount of credibility . . . More importantly, his testimony is completely contradicted by the testimony of Mr. Anderson and the testimony of Ms. Mendez and the absence of any correspondence in the Public Defender's file, which Mr. Johnson claims he wrote, requesting an appeal."

The record is clear that Anderson provided effective assistance of counsel. Anderson discussed with Petitioner both his right to appeal and the advantages and disadvantages (specifically the impact of an appeal on Petitioner's eligibility for a Rule 35 motion) of filing an appeal. Anderson fulfilled his constitutional duty to consult with Petitioner about his appellate rights. There is no credible evidence that Petitioner, notwithstanding Anderson's advice, insisted that an appeal be filed and that Anderson refused to file the appeal, as Petitioner contends. *See Gomez-Diaz v. United States*, 433 F.3d at 792 (To satisfy *Strickland's* prejudice prong, "a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed."). Ground Three therefore warrants no relief.

Accordingly, it is **ORDERED AND ADJUDGED** that Ground three of Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 1) is **DENIED**. The clerk is directed to enter judgment against Petitioner and to close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting

10

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Petitioner cannot make the requisite showing. And because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** this 25th day of February, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Petitioner, *pro se*
Counsel of record